Roy Tuck
1600 E. Vista Way #85
Vista, CA 92084
Ph: 760-840-1551
captroy@fishnazi.com

Plaintiff In Pro Se

**FILED**

Dec 14 2021
3:32 pm

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ shellyy      DEPUTY

# IN THE UNITED STATED DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

**ROY TUCK,**

   Plaintiff,

vs.

**JONATHON GRAVES;**
(San Diego County Deputy Sheriff)
**SAMUEL ROBISON;**
(San Diego County Deputy Sheriff),
**COUNTY OF SAN DIEGO;**
DOES 1 through 20;

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **'21 CV2086 CAB LL**

VERIFIED COMPLAINT FOR DAMAGES
CIVIL RIGHTS VIOLATIONS
U.S.C. TITLE 42 §1983, §1985, §1986, §1988

1) TRESPASS& UNREASONABLE SEIZURE
 U.S.C. TITLE 42 §1983;

2) EQUAL PROTECTION & DUE PROCESS
 U.S.C. TITLE 42 §1983;

3) MUNICIPAL LIABILITY FOR
 UNCONSTITUTIONAL CUSTOMS
 & PRACTICES
 U.S.C. TITLE 42 §1983;

4) LOSS OF SOCIAL STANDING;

5) INTENTIONAL INFLICTION OF
 EMOTIONAL DISTRESS

DEMAND FOR JURY TRIAL

## INTRODUCTION AND OPENING STATEMENT

1. This is an action brought by the Plaintiff against State and County

Sheriff's and Officials acting under the color of Law for several civil rights

violations involving trespass and unreasonable seizure, violations of the Equal

Protection Clauses and Due Process Rights, directly causing loss of social standing,

and intentional infliction of emotional distress upon this In Pro Se Plaintiff.

2.    At all times relevant herein the Defendant's, all State Officials acting under the color of Law or their agents working in concert, and outside the scope of their jurisdiction and authority, willfully caused the Plaintiff damages and numerous physical injuries, and in so doing, clearly violated established Unites States laws, as those very same laws apply to the Plaintiff rights and he is protected under the United States Constitution, more particularly under the Unites States of America's 4th, 5th, 6th, 8th and 14th Amendments.

3.    Be it known, each of the State officials [above-named Defendant's] have sworn an "oath of office" in regards to their duties and therefore each of their acts under the "color" of State law is in *direct violation* of their oath of office and equates to CRIMINAL CONSPIRACY under section U.S.C. Title 42 §1983 *et al.* and U.S.C. Title 42 §1986, Defendant's actions is tantamount to nothing less than CRIMINAL TREASON against the United States Constitution and the people of the United States.

## I.    JURISDICTION AND VENUE

4.    The Plaintiff brings this action pursuant to Title 42 sections §1983, §1985, §1986 and §1988, and invokes the jurisdiction of this court pursuant to Title 28 U.S.C. Section §1343(A))3)(4), Section §1331, and pursuant to the 14rh Amendment, Title 42 USC Section §1983, the Civil Rights Act of 1870. At all times relevant herein, all of the causes of action herein were committed within the geographical jurisdiction of this court.

5.    This court has supplemental jurisdiction over all state law claims.

6.    Venue is proper before this Court pursuant to 28 U.S.C. §1391(b), where the acts and transactions giving rise to Plaintiff's instant action occurred in this district, where Plaintiff resides in this district, and/or where Defendant's work or transact business in this district. All conditions precedent to the bringing of this action have been performed, waived or excused.

## II.   THE PARTIES

7.    Plaintiff ROY TUCK, [hereinafter "Plaintiff"], at all times relevant herein, resides  at 1600 E. Vista Way #85, Vista, California and has lived in San Diego COUNTY since 1972, and is a native Californian born in Glendale, CA in 1959.

8.    Defendant Officer Jonathan Graves (3760), [hereinafter "GRAVES] at all times relevant to this complaint herein was/is a Sheriff's officer employed by the San Diego County Sheriff's Department;

9.    Defendant Officer Samuel Robison (0477), [hereinafter "ROBISON"] at all times relevant to this complaint herein was/is a Sheriff's officer employed by the San Diego County Sheriff's Department, ;

10.    Defendant SAN DIEGO COUNTY, [hereinafter "COUNTY"], was/is, and at all times mentioned herein, was/is a public entity, duly organized and existing under and by the virtue of the laws of the State of California, with the capacity to sue and be sued, located at 1600 Pacific Highway, San Diego, CA 92101.

11.    Defendant COUNTY is responsible for the actions, or inactions, omissions, policies, procedures, practices, and customs of its various agents and agencies

12.    Defendant officer's GRAVES and ROBISON, were both compensated, enriched, and rewarded as active duty Sheriff's Officers by the above-named Defendant COUNTY.

13.    Defendant officer's GRAVES and ROBISON, at all times relevant were acting in such capacities as the agents, servants, and employees of the above-named Defendant COUNTY.

14.    Defendant officer's GRAVES and ROBISON, both believed to be residents of San Diego County, California, and both believed to work out of San Diego County Sheriff's station located in Vista, CA, and are both being sued individually in both their professional official and personal capacities.

15.    At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, or non-actions, omissions in, policies, procedures, practices and customs of its employees were constantly complying with the laws and the Constitution of the United States and of the State of California.

16.    At all times relevant to this complaint Defendant COUNTY either directly or indirectly trained, controlled, made policy for, employed, supervised, compensated, enriched, or rewarded both of the above-named Defendant's for their actions on November 10th and 11th of 2021 and thereafter.

17.    The COUNTY in this instant federal lawsuit is being sued as a person.

18.    The San Diego County Sheriff's Office, [hereinafter "SDCSO"] is a subdivision the above-named Defendant COUNTY and an active Defendant herein.

19.    At all times relevant hereto, Defendant's "DOES 1-20 are unknown persons who have either created policy or managed, ordered, controlled, or neglected to restrain or correct the Defendant's herein from committing said civil rights violations complained about herein. Including but not limited to the North San Diego County Vista jail house nurse[s] and medical staff on duty on said evening/night and early morning hours. These Defendant's will be identified and named to this Complaint as their names and addresses become known to Plaintiff.

20.    At all times relevant hereto and in all their actions described herein all Defendant's were acting under "the color or law" and pursuant to their authority as San Diego County Sheriff's personnel or public officials or agents of the above-named Defendant COUNTY.

### III.    PLAIN STATEMENT OF FACTS

21.    On Thursday November 11, 2021, ROY TUCK, PLAINTIFF, his step-son and grandson all spent the entire beautiful San Diego day together golfing at a local golf course followed up with a wonderful afternoon/evening dinner.

22.    Plaintiff upon returning home watched the nightly news on TV, and since he has always been a very early riser went to bed late evening post meridiem.

23.    Sometime thereafter Plaintiff was loudly awoken by his enraged very inebriated wife of almost 20 years screaming at him to *get out* of HER house!

24.    Plaintiff has known his wife for over [43] forty three years now and has been married to her for almost [19] nineteen years. Their marriage to each other has been very memorable and rewarding, running a very successful large specimen palm moving business [the entire marriage] working all over California and beyond.

25.    Together they have raised four son's/step son's now all in their mid-thirties and [5] five wonderful grand kids.

26.    During the time Plaintiff has known his wife she has *never* had a serious drinking problem, and in fact Plaintiff's wife has gone months and years at a time without drinking *any alcohol at all*.

27.    Since their marriage both Plaintiff and his wife have drank during their numerous vacations to Cabo San Lucas, Costa Rica and other exotic vacation spots, and at sporting and family events without *any incidents* or *reasons* to call the local police. Plaintiff's wife has always been a *complete sweetheart* and great life partner.

28.    But in recent years with Plaintiff's wife's nearing [60] sixty years old she has been using alcohol [as do many of us] as a way to get through these tough times and things she cannot control around her, versus pain pills etc.

29.    Plaintiff's wife has had a very bad past few months [i.e. she buried her best friend of over 50 yrs in early September, her father died and he was memorialized and buried at the Veterans of War Cemetary in San Diego in early November [he was Korean purple heart recipient]. And [2] two out of [3] three of her son's who are all in their mid-30's are paying large sums of monies to family attorneys to get visitation rights restored to be able to see her grand kids. One grandson she has not seen for over [6] years now, the mother's are absolute tyrant's.

30.    These recent family issues Plaintiff's wife has recently been dealing with compounded with a recent tequila drinking habit tend to create an *unhappy drunk* out of her in a very short period of time.

31.     Plaintiff over the years has been known to be a more happier drinker when drinking, [more outgoing and funny], but not the case with Plaintiff's wife.

32.     Plaintiff's wife when she is an angry drunk and had too much tequila will tend to get sad and emotional, then extremely angry and agitated the very next second. And it does not matter who is in front of her. [I.e. If her son happened to drop by to visit us and knocked unannounced on the door she would turn her anger away from whoever she was mad and yelling at before and now direct it at him]. When Plaintiff's wife is in this *tequila rage* she has a strong need to vent to anyone.

33.     There has been one past bad drinking experience [several years ago] where the Plaintiff's wife had gotten in a tequila rage and went and broke the bill off of Plaintiff's prized 350lb. blue marlin mount he has proudly displayed in his living room over his tv set. It was very expensive to have fixed and was not an easy affair.

34.     On this night, Plaintiff was awoken suddenly in his sleep with his wife screaming at him to get out of HER house! She entered the bedroom more than once as the Plaintiff was hoping she would just go into the living room and pass out listening to music videos as she has done when drunk and angry in the past.

35.     This was not to be the case here, the Plaintiff could hear his wife in the next room [the Plaintiff's home office] rustling around then he heard a big bang. When he got out of bed and looked into his home office door he saw his wife breaking the bill off of a second striped marlin [his sons 1st marlin he ever caught]. When he entered the room, she tried to wrench the entire seven foot long heavy fish mount completely off the wall. Plaintiff was able to stop her from doing any further damage to the fish mount but not until after she clawed and scratched his face and nose leaving three distinctive scratch marks on the left side of his face and nose.

36.     All the while Plaintiff's wife was yelling "get out of MY house" now!

37.     Plaintiff went back into the bedroom and attempted to get back into bed hoping that his wife would calm down, she did not, Plaintiff heard his wife dialing her cell phone and then she yelled out "I am calling the Police" you had better get out of MY home!

38.    Plaintiff only had time to grab a pair of shorts which he hastily and accidently put on inside out and wore backwards, and with a tee shirt and no shoes he ran out of the home they both shared as rapidly as he could possibly could.

39.    Plaintiff then went up to the park owned clubhouse/pool area, used his private gate key to enter the secured, private, locked pool area [which he is part owners] fully believing he was *totally safe* there and Plaintiff never thought that he was *about to become a victim of police brutality* and *have his civil rights severely violated* by the very same San Diego County Sheriff's officers he has paid tax's to San Diego County for protection of his civil rights and liberties his entire adult life.

40.    Being [62] sixty two years of age, Plaintiff has lived with his wife for the past [9] nine years in a seniors living mobile home park that is presently owned by the 143 individual share holders presently living on each lot.

41.    The Plaintiff and his wife *own* the mobile home they live in and the property it sits on *outright*.

42.    The Plaintiff also own shares in the entire privately owned multi-acre senior mobile estates property, including the privately owned community clubhouse and private *locked* pool area.

43.    Soon after arriving at the clubhouse pool area the Plaintiff used his [owners only] pool key to open the pool area's security gate and enter the pool area and sit down on a pool chair under one of the many pool table/umbrella areas.

44.    Soon thereafter the Plaintiff observed multiple San Diego Sheriff's patrol vehicle's circling the pool area from the street, then one cruiser shined a bright search light on the private pool area and spotted the Plaintiff sitting there by himself, doing nothing, not bothering anyone.

45.    Soon thereafter a San Diego Sheriff presumed now to be one of the Defendant Sheriff demanded that Plaintiff get come over and open the private property pool gate lock for him and the other officers to enter and talk to him.

46.    *Initially*, Plaintiff being elderly and knowing his rights as a private citizen standing on private property he owns, *Plaintiff elected* to talk to the officers and answer their questions and concerns through the locked security gate informing all of the numerous officers on the scene that <u>Plaintiff did not call them whatsoever</u>.

47.    Plaintiff went on to explain in detail why he was sitting by the pool at night by himself, that he had been sound asleep in bed when his drunk wife woke him up and chased him out of his home. That *he wanted no problems*, and also <u>*did not want to press ANY charges on his wife for anything*</u>, [all fell on deaf ears].

48.    Plaintiff immediately felt in the air that the Defendant's and other sheriff's officers standing there outside the gate now [very intimidating and scary] they may want to harm him, or over react in this serene pool area [the same pool area he has enjoyed for years with his wife and family] if he was to open the gate for [at this point in time] unknown Defendant's and other armed military clad officers.

49.    The Defendant officers coaxed the <u>*unwilling scared*</u> Plaintiff to eventually open the private pool gate so they could enter and *just talk to him* by the use of complete lies. Saying things like <u>*the Plaintiff was not in ANY trouble*</u>.

50.    The Defendant Officers never acknowledged the fact that Plaintiff stated to them that he did <u>NOT </u>want to press charges against his wife for anything, they did not even ask the Plaintiff if he had some issues with his wife *or otherwise*.

51.    More importantly not one officer out of multiple arriving officers *ever* mentioned the now bleeding scratch marks on Plaintiff's face [*not once*] Plaintiff has photo evidence of these same scratches for the discovery phase of this trial.

52.    Plaintiff firmly believes Defendant officers were *all pre-determined* and [*acting very headstrong*] in wanting to *arrest* the Plaintiff <u>*regardless of the present facts in front of them*</u> or <u>*anything*</u> the Plaintiff told them at the pool area.

53.    After further discussions amongst all of the above-named officer Defendant's and other arriving officers Plaintiff was told he was being placed under arrest. When Plaintiff asked for what? He was told for Felony Domestic Violence.

54.     At this very moment Plaintiff went into great detail to both arresting Defendant Officers in detail about his several serious ongoing degenerative effects on ALL of his bodies joints, that this [special needs] medical issue ran in his family.

55.     Plaintiff explained in greater detail to both above-named Defendant arresting officers that his now [93] ninety three year old mother [who also lives in the same senior mobile park about a block from Plaintiff] has had to have both of her knees and both of her shoulders completely replaced, and that Plaintiff was presently waiting to have his right shoulder and left knee joints completely replaced, [but Covid-19 had been delaying all of his surgeries]

56.     Plaintiff's entire conversations with both arresting Defendant Officers should be *preserved* on their police worn body camera's [hereinafter "BWC's"] as Plaintiff went on to describe to both Defendant officers in exacting details how he has had nightmares about having both of his arms handcuffed behind his back.

57.     Plaintiff at ALL TIMES remained apologetic, scared, polite, and totally compliant with both Defendant arresting officers <u>during his entire arrest</u>, *regardless* both Defendant's *ignored* or *acted like they were not listening at all* to the Plaintiff's highly detailed accounting of *<u>his special medical problems/needs</u>*. All Fell on deaf ears.

58.     Plaintiff also went on to explain to both Defendant officers that he had also been arrested in the early 1990's [over 30 years prior] and was fully aware of *<u>numerous different ways</u>* to *<u>be detained and handcuffed</u>*. Especially with his *very unusual* extra large wrists and arms. Zip ties worked had best or oversized cuffs.

59.     Plaintiff also informed both arresting Defendant officers that if they were to arrest him to **PLEASE DO NOT** secure or handcuff his arms ***behind his back***.

60.     Plaintiff brought the fact to both Defendant's attention that he was being very polite, apologetic and compliant with both Defendant officers, that he was not going resist his arrest in any way, and begged and *pleaded* with both Defendant officers for "*<u>special treatment</u>*" due to his *<u>ongoing medical issues</u>*.

61.     Plaintiff made it *more than clear* to both arresting Defendant officers that *normal*, or *standard police issued handcuffs* **would not fit on his wrists**, and if the handcuffs they were presently going to use on the Plaintiff did not fit and were to be used on him regardless that their police issued handcuffs were *going to be way too small for the Plaintiff*, and these smaller police issued handcuffs would cause extreme bodily injuries and long lasting discomfort and be a direct cause of extreme nerve damage, not to mention possible blood clot issues in *his present physical special needs medical condition*. All fell on deaf ears.

62.     All of these initial pre-arrest conversations [ i.e. where the Plaintiff begged and pleaded with both arresting Defendant officers to please NOT secure his arms behind his back for the [5] five mile ride to the Vista jail] should all be preserved on both Defendants BWC's.

63.     Plaintiff *went even further in his detailed medical explanations* directed at both Defendant arresting officers as to *why* he cannot have both his arms secured behind his back due to both his shoulder sockets being diagnosed by his shoulder Dr. Knudson from Arch Medical of Escondido as being bone on bone socket joints.

64.     Plaintiff went of to inform both Defendant's that securing both of his arms behind his back would not only be extremely painful but also cause him extreme bodily injuries, long lasting discomfort, and be a direct cause of extreme nerve damage, not to mention possible blood clot issues in *his present special needs medical condition,* and taking blood thinners. All fell on deaf ears.

65.     All of these initial pre-arrest conversations where the Plaintiff begged and pleaded with both arresting Defendant officers NOT to use their standard "police issued" handcuffs on his arms and wrists in fear of all the pre-arrest medical issues described herein for the [5] five mile ride to the Vista jail and all post-arrest harm to his body *should all be preserved on both Defendants BWC's.*

66.     Plaintiff also informed both arresting Defendant officers that he had recently had a severe life threatening heart attack and was *presently* on blood thinners and was also very concerned about having any of his blood veins constricted for *any amount of time.*

67.     Plaintiff told both Defendant's he was _very very worried_ about
acquiring blood clots or other major medical complications from having both of his
arms and wrists bound behind his back with small standard police issued hand cuffs.

68.     During these _very critical_ pre-arrest minutes Plaintiff remained
_very adamant_ about his present numerous major physical and medical complications
concerns pertaining to all of the following and more

    1) the way he was to be placed into submission [handcuffed versus zip ties]

    2) the size of the handcuffs,

    3) if the handcuffs would be placed on his lap or,

    4) if the handcuffs would be placed on his wrists with both of his arms behind
his back for transport to the North County jail house during his bogus uncalled for arrest.

68.     At this particular time in the Plaintiff's arrest it was becoming more and more
apparent to the Plaintiff from the _reactions or non-reactions_ on both arresting Defendant
officers faces, responses or non-responses to his detailed explanations and requests
that both Defendant's officers were _not listening to the any_ of the Plaintiff's urgent
pleadings, _were not listening to or acknowledging anything_ he was saying **at all**. Why?

69.     Plaintiff now believed that both arresting Defendant officers were
acting very headstrong and determined to arrest the Plaintiff, period.

70.     Plaintiff later that night found out at the jail booking room that he had
[erroneously] been charged with a felony for Domestic Violence on his wife.

71.     Immediately upon being placed in handcuffs by the arresting Defendant
officers, Plaintiff verbally complained to both Defendant's about the instant extreme
**_pain level_** [10 on a scale of 10] both of his wrists and shoulder's were presently in
and pled with both arresting officers to please restrain him for transport to jail in a
different way, or, with larger handcuffs or zip ties placed or strapped to his waist or lap.

72.     Plaintiff also detected at this very moment in the arrest a more than
_obvious smug look_ or _giant smirk of pleasure_ on both Defendant officers faces while
they were over-cinching down both undersized handcuffs onto the Plaintiff wrists.

73. All Plaintiff's numerous painful requests for *immediate help* completely fell on deaf ears pre-arrest, post-arrest, and during the entire ride to the Vista jail .

74. Plaintiff firmly believes to this day the arresting Defendant officers *intentionally* cinched the Plaintiff's handcuffs down *as far as humanly possible* as a *personal form of punishment.* [Police brutality for an alleged wife beater?]

75. Both Defendant's were also at this very same point in the arrest *laughing out loud to each other* as they pointed out that the Plaintiff's shorts were presently being worn both inside out and backwardswith the pockets hanging out.

76. Plaintiff would hereby notice this honorable Ninth District Court that all Plaintiff's multiple extremely painful requests for immediate help should be preserved entirely on each Defendant officers body worn camera's BWC's.

77. During the entire extremely painful trip to the jail Plaintiff continually begging and pleading with both Defendant arresting officers to pull over immediately and please re-check or change out the handcuffs presently binding his wrists behind his back and that he was in EXTREME PAIN! These numerous requests should be preserved via each Defendant officers body worn camera's BWC's.

78. After what seemed to be an eternity of time and pain the Defendant arresting officers arrived with the Plaintiff at the North San Diego County Jail located at 325 S. Melrose Dr. Vista, CA, 92081.

79. By this time Plaintiff had complained the ***entire trip*** from the back of the patrol car that he could not longer feel his hands, they were both completely numb and his shoulders felt like they were both presently dislocated.

80. Upon arrival at the San Diego County jail the arresting Defendant officers continued to deny the Plaintiff of his Civil rights and liberties, instead opting to *continue on* their *personally inflicted police brutality* and further compounded Plaintiff's ongoing tormenting extreme pain by NOT un-cuffing the Plaintiff **at all**.

81. Defendant's *instead opted* to *continue on with their personal sick form of punishment* and police inflicted brutality and made the decision right then and

there at the outside booking area of the Vista jail house to continue on their self-inflicted

painful punishment and continue to intentionally deny the Plaintiff of his civil rights

and liberties and at the same time continue to NOT listen to or obey ANY of the

Plaintiff's numerous pre-arrest special needs and requests, nor his numerous painful

plea's en-route to the Vista jail house to PLEASE STOP the pain **immediately**.

82.     There at the outside booking area of the Vista Jail both Defendant's after

some discussions amongst themselves approached the Plaintiff and got him out of the

patrol car [*while smiling at each other*] *intentionally and deliberately* increased Plaintiff's

present pain level with their present decision and decided to *keep both the*

*Plaintiff's arms & wrists secured behind his back* [*never* releasing them].

83.     Defendant's instead opted to re-handcuff the Plaintiff with his hands

still behind his back [despite Plaintiff being polite and apologetic and obeying all

the Defendants command's] to a nearby outside jail house bench for what seemed

like more than two hours in the cold, in extreme pain, with no shoes or proper shirt

on and his shorts on inside-out and being worn backwards [the Defendant officers

were laughing to each other about Plaintiff's sad shape, [was he really a wife beater?]

84.     After what seemed like an eternity, with the Plaintiff having to sit there

for another lengthy period of time [in gut wrenching extreme pain] in the freezing

cold all the while both arresting Defendant officers were chatting away with each

other totally ignoring the Plaintiff while they talked shop, drank hot coffee, and

as much of the taxpayers monies and time as possible, while being paid, with not a

care in the world, happy with their present accomplishment [a felony D.V. charge] .

85.     When the two arresting Defendant officers finally did un-handcuff the

Plaintiff for whatever reason, [i.e. maybe the Defendant officers had figured out

between the two of them that they had burned or wasted enough of the tax payers

time as humanly possible and decided they had to go back to work before their

inactivity and reason for getting paid gets discovered by other superior officers.

86. For whatever reason, it was finally booking time, time to book the Plaintiff in after killing tons of time and torturing the felonious Plaintiff inmate.

87. When the handcuffs finally did come off *all eyes in the room were the size of sand dollars including the Plaintiff's*. Plaintiff and both Defendant's were shocked.

88. Plaintiff TUCK yelled out in pained shock and held his right hand [that he could no longer feel AT ALL and was now totally numb] up into the jail house light in front of the faces of both arresting Defendant officers and can only explain what he shockingly saw then as horrid. His entire right wrist was gory looking with a very nasty ugly purple/black/blue/red bloody bleeding super deep indented *handcuff shaped* gully circumventing his entire right wrist. It was so gross it was very hard for the Plaintiff to look at, let alone comprehend just WHY this had to happen at all ? Why was Plaintiff being treated this way? [wife beater treatment?]

89. When the Plaintiff took his eyes from his very nasty ugly purple/black/blue/red bloody bleeding super deep indented officer inflicted right wrist wound and took the time and looked over at both arresting Defendant officers he saw the *same look of shock and confusion [why] on both of their faces*, after that there was what seemed like a super long period of silence at the outside booking area with all parties just standing there looking at my injured right wrist [*this scene should all be preserved on both Defendant officers body camera's BWC's and also on the outside Vista Jail booking area building camera's*] .

90. Plaintiff immediately detected both arresting Defendant officers going into [damage control/cover-up "mode" as it pertained to the Plaintiff's extremely painful [now totally numb] gross officer inflicted injury as a direct result of [intentionally inflicted police brutality] *right there in front of the outside booking area jail house camera's* they immediately ignored what were now Plaintiff's continual verbal plea's and DEMANDS to avail himself of his civil rights and liberties and be [immediately] taken across the street to the nearby Tri City Hospital emergency room for immediate medical assistance.

91.    Plaintiff could tell the two arresting officer Defendant's *were both in obvious shock themselves* after seeing the Plaintiff's gross looking right arm and wrist, they also *both totally ignored* the very serious statements and questions the Plaintiff was saying out loud to himself and them [in *total shock*] **very loud** [i.e. like "This ain't good", "why did this have to happen"? "this is terrible", "why did you two officers totally ignore me". Was it because they had me already tried and sentenced in their minds as a "wife beater"? Were they having fun with this?

92.    At this moment in time the Plaintiff was going crazy wondering why he was arrested to begin with at all, and all kinds of questions were now swimming around in his head [i.e. Why were the Plaintiff's numerous non-stop pre-arrest and post -arrest *urgent pleas for help and medical attention totally ignored?* Why was the casual way [wrists bound to his lap] the Plaintiff offered the Defendant officers to detain and transport Plaintiff during his arrest went *also totally ignored*, this was totally uncalled for, unprofessional, and  illegal police brutality practices in action.

93.    What if the Plaintiff was deaf, dumb, or blind? Would the arresting Defendant officers treat the Plaintiff *any differently then they were treating him now*? Would they intentionally use undersized cuffs or over-cinch down the cuffs on an oversized deaf, dumb or blind person? *and then later totally ignore* this same challenged person's painful pleas for assistance from them or a medical person?

94.    The two arresting Defendant officers stumbled and stymied their way around the booking area until they got their two stories straight and then came back near the Plaintiff and said absolutely nothing. Plaintiff could hear the crickets in the cold outside night air at the jail, but neither Defendant officer [who were now both obviously dumbfounded and at a loss for words], said anything and were in obvious visually obvious to the Plaintiff in complete damage control mode and stressed now themselves, Plaintiff could see their wheels turning, thinking what to do next?

95.    The Plaintiff who was still in extreme pain was so shocked at the moment looking at his grossly damaged right bloody wrist *totally forgot about* the

pain in both of his shoulders [as if they were both dislocated] and he looked at his left wrist which was also numb and had extreme damage to the lower arm and wrist area and his left wrist area was also bleeding and numb and he again thought WHY?

96. Plaintiff made the these very two arresting Defendant officers standing in front of the Plaintiff now in total shock and in immediate "cover-up" mode, to jump or wake up from THEIR thoughts when Plaintiff held up his dripping with blood right hand and wrist, [remember Plaintiff had told both Defendant's pre-arrest he was on blood thinners] he shouted aloud in his voice a lot louder than normal "What are you and the jail staff or medical people going to do about my dripping with blood right arm and extremely damaged and extremely painful right wrist?

97. *It was only in this one brief moment* during the entire nights nightmarish uncalled for arrest experience that the two arresting officer Defendant's acknowledged anything Plaintiff said [*only because now they knew they had to*] seeing Plaintiff's rapidly oozing and dripping on the ground bleeding right wrist.

98. It was more than obvious at this juncture of the arrest that both arresting Defendant officers priorities were *no longer* sitting around killing tax payers time bull shitting with each other with their shop talk [all the while totally ignoring the Plaintiff extremely painful life threatening medical pleas for help and concerns].

99. Plaintiff was now profusely bleeding from an open police inflicted wound in a highly infested Covid-19 jail house environment, not to mention Aids or TB or an entire myriad of other communicable diseases known to be very prevalent in the extremely overcrowded [due to covid-19] State or County run jails.

100. What happened next totally blew this Plaintiff away. The two arresting Defendant officers called the jail house nurse on duty [yet to be named to this lawsuit] over to the outside booking area and instructed her on what to say and do.

101. The two Defendant arresting officers had a private little discussion with the jail house nurse obviously coaching her and whispering in her ear private instructions from them pertaining to the Plaintiff sitting over there on the seat, they

were all totally out of hearing range of the Plaintiff but where Plaintiff could see them all [they were coaching the on duty jail house nurse bringing her up to speed, and later Plaintiff firmly believes now that Defendant's instructed the nurse while she's was applying a simple Johnson's bandage to the Plaintiff's bleeding wrists to TOTALLY IGNORE ALL of Plaintiff's now urgent plea's to be taken to Tri City Hospital emergency ward immediately, or at the very least the jails medical ward].

102.    The on-duty jail medical nurse that night did exactly just that. She approached the Plaintiff on the same bench Plaintiff had been intentional left for an undue *very painful amount of time* [the entire time with intentionally over-cinched handcuffs] as a means of addition punishment while the Plaintiff was still in obvious shock holding and cradling his extremely painful gory bloody right lower arm, hand and wrist, and the on duty nurse said *absolutely nothing*!

103.    The on-duty jail house medical nurse [*with closed ears*] went on to very rapidly apply a large what seemed like [2 inch x 4 inch] multi-use large Johnson bandage very quickly to the plaintiff's bloody oozing right wrist and lower arm area and briskly walked away from the outside booking area.

104.    The on duty jail house medical nurse did NOT answer ANY of the Plaintiff's numerous urgently painful plea's for her to assist him with immediate medical attention at Tri City Hospital literally across the street from the jail, or at the very minimum be seen by the jail house medical personnel *to both document and take real time photos of the Plaintiff's multiple painful injuries*, she refused.

105.    Both arresting Defendant officers [even though they had been walking around presently in the booking area with the Plaintiff's cell phone in their hands waiving it around and asking Plaintiff for the access code to look inside his phone], while laughing at the Plaintiff totally refused to take real time photos of the Plaintiff's painfully gross looking right wrist and arm, and they refused Plaintiff's multiple verbal requests to have *someone in the jail house staff* take *real time photos of his bloody right wrist before the nurse applied a bandage to the area*

that was bleeding profusely, [especially the area where the *handcuff hinge and clasp were located and had crushed into the Plaintiff's hand and wrist* and created *extreme nerve damage*]. All Plaintiff numerous requests for medical assistance and documentation of his gross bleeding injuries were *totally ignored by all*.

106. The Defendant's had already made up their minds early on during this illegal incident to totally quash it and focus solely on "cover up mode".

107. The last thing both Defendant arresting officers wanted on their record was ***to properly document*** and ***have to write up and file*** a report either lying or detailing the *very same* extremely painful *now bloody* nerve damaging injuries they had inflicted on the Plaintiff on *purpose* to inflict their own personal & what each Defendant knew to be a very painful long duration of undue punishment on this now feloniously charged elderly [62] sixty two *very compliant* man [the Plaintiff] [*even after having been warned numerous times by the Plaintiff "NOT TO"*] or by their own pure ignorance of the Plaintiff's *special needs* and the Plaintiff's *civil rights*.

108. PURE Ignorance, or the fact that both arresting Defendant officers can both [later] lamely claim they were acting directly under the *color or law,* **something was the driving force** behind he Defendant's] direct pure stubborn ignorance to the quality of their present job performance being nothing other than draconian to say the least, the Defendant's obvious *ignorance or non-compliance* with Plaintiff's numerous extremely painful verbal requests to ***please stop the pain***! were all either deliberately ignored or ignorantly ignored entirely.

109. Plaintiff has NO idea just how long he was kept there [*against his will*][*seemed like hours*] with both of his shoulder still handcuffed behind his back, [*both shoulders in extreme pain* and *both wrist and hands long ago being numb*] his cell phone was taken from his possession and he could not see any clocks in the booking area or inside the jails holding tanks.

110. Plaintiff believe's he arrived at the booking area of the jail house and was unnecessarily/intentionally left with both his arms still extremely *painfully*

*cuffed behind his back with both undersized handcuffs being left intentionally over-cinched* somewhere around *11:00 post meridiem time* on the night of November 11th 2021.

111.    Plaintiff also believes that **2 ½ hours** could have elapsed before this *now felonious* Plaintiff was finally handed over from the present custody of the [2] two arresting Defendant officers directly to into the custody of the inside jailers.

112.    Could it have been as long as 2 ½ [two and a half hours] ? Even if it was not it sure seemed like that long to the Defendant. Even if it was not exactly two and a half hours of extreme pain, no amount of time is good to have left the Plaintiff with his circulation totally cut off in his arms shoulders and wrists.

113.    Sometime before the hour of 01:55 post meridiem the Defendant's *finally un-handcuffed* Plaintiff's hands, wrists and arms from behind his back.

114.    The Defendant's *zero care and concern* for the Plaintiff during this entire evening and early morning hours  arrest was nothing short of *draconian* all the while they smiled at each other in front of the Plaintiff and made it more than apparent to Plaintiff who was thinking the entire time "*why did this have to happen at all?*" the two arresting Defendant officers through their facial expressions and verbal comments to each other and him left *no doubt to Plaintiff* that they were both *having fun ignoring Plaintiff's painful requests*, but also enjoyed *inflicting their own personal painful punishment on the Plaintiff and leaving him there with his arms wrists and hands over-secured with under-sized handcuffs over cinched for a totally lengthy un-necessary amount of undue time*.

115.    Plaintiff was left with the jailers as a victim of police brutality and totally denied all of his civil rights during the entire nightmarish illegal incident.

116.    Defendant's did WHAT THEY HAD TO do to immediately quash the illegal incident and effectively leave the scene without documentation by having a few bandages hastily applied by the on-duty nurse to his bloody arms and wrists and [only after both officers had killed as much of the taxpayers time and money as

possible without anyone noticing] [the entire time Plaintiff was in extreme pain]
then they finally decided to hand the Plaintiff over to the sole custody of the jail
house booking officers, never to be seen again by this Plaintiff.

117.   These same jailhouse officers may be named as Does 1-20 an added to
this lawsuit in the very near future.

118.   Plaintiff firmly believes that he *very well* could have been
unnecessarily dealt additional extremely painful police brutality punishment,
and denied ALL of his civil rights for the extremely painful unnecessary amount
of time of possibly 2 ½ hours [two and one half hours] far too long for *anyone*
[even though Plaintiff begged and pleaded politely on numerous occasions to
"**stop the pain**"] .

119.   Defendant's both ***did nothing*** for a 2 ½ hour period of time from
approximately 11:00 post meridiem on Thursday night November 11th 2021 to
almost 2:00 ante meridiem [booking sheet 0:155am] with booking number
#21144238 for *the Plaintiff 2 ½ long painful hours* denying him his civil rights.

120.   Plaintiff further believe's and alleges herein that sometime near the
end of the *extremely painful unnecessarily long 2 ½ hour period of time* before the
time of Plaintiff's actual booking of 0:155 ante meridiem the [2] two arresting
Defendant officers finally removed the handcuffs off of the Plaintiff's arms and
wrists and discovered the gross bloody blue/black/red indented wrist of the Plaintiff
They took NO PHOTOS WHATSOEVER! Allowed any visits to the nearby
emergency room or jail house medical unit, and preserved NO EVIDENCE!

121.   After the jail house nurse applied the bandage to the bloody right wrist
area of the Plaintiff The two arresting Defendant officers could not have handed the
alleged now felonious prisoner Plaintiff TUCK over to the jail house booking
officers fast enough. They could not get out of there and away from this obvious
bad policy procedure decision[s] of theirs and the now injured Plaintiff fast enough.
Plaintiff has never seen either arresting Defendant officer since being handed off.

122.   The jail house officers then immediately fingerprinted the Plaintiff, and because he was arrested for a felony the Plaintiff had to provide these same officers a DNA mouth swab and he was then designated booking number #21144238 that the time on his booking sheet was 0:155 ante meridiem time.

123.   Throughout the entire booking process Plaintiff pleaded and begged anyone who would listen to him [any inside the jail officer] holding up his now bloody arms and wrists to please be allowed medical assistance? The blood was leaking through and around the meager bandage the jail house nurse had applied earlier and the Plaintiff had to use his shorts to constantly wipe the oozing blood off of his wrists and arms. Plaintiff plea's were again totally ignored by all jailers.

124.   After the booking process was completed the Plaintiff was shoved into an overcrowded  holding cell by the jailhouse officers with about 20 other inmates and shown the phone on the wall if he wanted to make a call or secure bail.

125.   The only thing the Plaintiff was provided for comfort in the freezing cold jail tank was a pair of Chinese shower shoes and a medical mask for covid-19.

126.   During the morning hours *after 01:55 ante meridiem* [the exact time Plaintiff was officially booked into the Vista jail] both of plaintiff's wrists continued to bleed around Plaintiff single application bandage. [*Plaintiff's on blood thinners*]

127.   The ONLY thing the Plaintiff could do at the time in that jails freezing over-crowded holding tank to keep the thin blood that was presently oozing out of his wrists and around his redundant bandage from dripping on the floor was for the Plaintiff to continue to wipe all of the oozing blood off his wrists onto his shorts.

128.   After a long period of time had elapsed in the jails holding tank another inmate noticed what the Plaintiff was doing, and that he was bleeding and handed the Plaintiff a roll of jail house toilet paper [that he was using as a pillow] and said "here it looks like you could really use this". [The jails holding tank should have had camera's inside it to constantly monitor the over-crowded tank]. Plaintiff will be requesting all of this video evidence during the discovery phase of this trial.

129.    Soon thereafter, the same inmate that provided the Plaintiff the jail house toilet paper roll, noticed the _now alleged felonious inmate_ Plaintiff was desperately trying [without his prescription reading glasses] to properly and clearly read the jail house wall phone instructions and read the bail bondsmen numbers also listed above the same jail house holding tank phone. Plaintiff was told by one of the jailers that if he did not get someone to bail him out that night, that he would end up staying in jail about [10] days until he could see the judge, the court and jail system was way backed up. So the Plaintiff being told this fact made securing bail asap a high priority now. This same helpful inmate assisted the Plaintiff to connect to a local bail bondsmen on that jailhouse intake tank phone [Alladin Bail Bonds].

130.    Soon thereafter, Plaintiff was successful in talking to the local Vista Alladin bail bondsmen who placed Plaintiff wife Debbie on a three way call, Plaintiff's wife immediately apologized for Plaintiff present situation, told him she told all of the arresting officers who entered her house without her permission that she did not wish in any way to press ANY charges against the Plaintiff, and that she had informed them all that Plaintiff step-son had been called and was already En route to drive the Plaintiff to his house to stay for the night.

131.    Plaintiff's wife also said she was super sorry for his present situation and that the same San Diego County Sheriff's officers who entered her living room _without permission_ tried super hard to coax/goad and encourage her to press charges against her husband at the very least, and they also pressed the issue hard on her and strongly suggested she follow up pressing charges with a restraining order. WHY?

132.    Plaintiff heard on the jail house holding tank wall phone that he was running out of minutes so he had to tell the bail bondsmen and his wife to PLEASE get him out of that jail NOW. He did not feel like spending 10 days inside that jail for anything! Especially having to endure ANY more undue punishment for something he had nothing to do with or made happen. He then hung up and returned to his small spot on the freezing wooden bench by the toilet to wipe off his blood.

133.    Plaintiff remained a willing accused half naked frozen in extreme pain and discomfort bleeding inmate for a number of hours before he was told he had made bail, he thanked God to be leaving the jail that and not getting covid-19.

134.    Plaintiff was then moved from the over-crowded original jail intake tank, [Plaintiff has no idea how long he was in this original tank] to another smaller tank for about another {30] minutes, before the doors were opened by a morning shift jailer and he was instructed to go and stand by a nearby jailhouse clerks window behind a yellow line. He was given his wallet and keys to his pick up truck and shown the open door to the street.

135.    Plaintiff made sure he did not walk away from the jailhouse clerks window *until he held up his completely bloody right wrist* which now had a completely bloodied bandage with a bunch of bloody jail house toilet paper wrapped around that. {It looked at though the Plaintiff had attempted to slit his wrist}. Plaintiff made sure he tried "one last time" to get *anyone* to either assist him with his present painful condition and get some treatment, or, at least take some photographs and officially document the injuries he had received as a direct result of police brutality and having his civil rights intentionally violated while in the direct custody and care of the Vista jailhouse he was now being kicked out of.

136.    Plaintiff urgent requests for medical attention and documentation were totally ignored by the jailhouse clerk and he was made to feel that if he did not get his butt outside of the jail now he may not be leaving that morning at all. So he left.

137.    The hour seemed to be around 7:00 to 7:30 ante meridiem when Plaintiff got picked up by his wife for the short ride to the nearby Alladin bail Bonds in Vista to check in with them. This was the early morning hours of Friday November 12, 2021. Plaintiff returned home briefly to get some cloths.

138.    Plaintiff immediately took out his cell phone and took a number of cell phone photos of his numerous extensive injuries, including his scratched face and nose area and both of his blue/black/purple bloody wrists and arms.

139. Plaintiff then left his home and walked into the nearby emergency room trauma area to have his extremely painful and gross looking injuries looked at.

140. Plaintiff spent the entire rest of that Friday November 12, 2021 after his release from jail in the Palomar Medical Center's Escondido, emergency room.

141. After Plaintiff *endured a long painful freezing sleepless night in jail* Plaintiff then spent and entire day and afternoon/evening over [13] thirteen hours painfully sitting there thirsty and hungry [the entire time wondering WHY?] until he finally had all of his injuries thoroughly examined by Dr. Sean Burn M.D.

142. This pre-examination occurred at approximately 14:14 post meridiem time and Dr. Sean Burn then ordered [6] six different x-rays to be performed on the Plaintiff's right hand due directly to Plaintiff's obvious extremely painful trauma.

143. Plaintiff then waited several more hours for the x-ray results to be returned to Dr. Burn and for him to have time in his very busy schedule to look at and evaluate them.

144. Plaintiff was then summoned to his Dr. Burn's ER office where the doctor went on to explain to the Plaintiff that from the visual trauma he can see, and after viewing all of the x-rays and hearing the Plaintiff's explanations of the extent of his present pain, numbness and the locations thereof, he diagnosed Plaintiff with several severe contusions and several severely pinched nerve[s] .

145. The ER doctor Burn's final complete diagnosis was that Plaintiff had acute "Wartenberg's Syndrome caused by some or all of the prolonged above-described police brutality and abuses most likely by the use of handcuffs that were either too small, cinched down to tightly, for a length of time. He informed the Plaintiff that he should see his primary doctor Elaine Davidson as soon as possible.

146. Plaintiff was very fortunate to get an emergency type visit with his primary doctor Mrs. Elaine Davidson of the Indian Health Council of Pala, CA. after a *long super painful weekend* on the following Monday November 15th.

147. Dr. Davidson after completing her examination informed the Plaintiff that she was going to immediately refer him to a hand, wrist and arm

specialist at the nearby Arch Medical Group of Escondido and that his new hand doctor specialists name was Dr. Arush Patel.

148.   Also on the *first weekday after the Plaintiff's long painful weekend* he went online and filed a police brutality, civil rights complaint with the San Diego Sheriff's Internal Affairs department clearly reporting the entire incident in detail and asking a few very important questions or favors from them on his behalf.

149.   Sometime this very same first Monday after the Plaintiff's bogus unnecessary arrest and incarceration, the Plaintiff's wife Debbie informed him that she had received a call earlier from the San Diego District Attorney's Office and local district attorney assigned to her husbands case, basically asking if she was okay and how things were going with her husband? And whether she was still NOT interested in pressing criminal felony domestic violence chargers against her husband or their offices assistance in helping her file a restraining order. Plaintiff's wife told the district attorney on the phone everything was totally fine and she never wanted to press ANY charges against her husband.

150.   A few days later Plaintiff's wife informed him that she was called on her cell phone again by different local agency basically requesting the same answers to the same types of questions and concerns that the district attorney had asked. She again repeated the same answers to the same types of questions and concerns.

151.   To this day of the writing of this federal Complaint exactly [30] days has since elapsed since the date of November 11, 2021 of the Plaintiff's bogus arrest the Plaintiff HAS YET to receive ANY types of concerning phone calls from the San Diego District Attorneys Office the district attorney herself, or, ANYONE, even after he reported the incident and his injuriesto the following local agencies:

   a) San Diego County Sheriff's Internal Affairs Unit;
   b) San Diego Citizen's Review Board;
   c) Anyone and everyone who would listen at the Vista jail;
   d) The [2] two arresting above-named Defendant Officers.

152.    Exactly one week after seeing his primary physician Dr. Davidson at the Indian Health Clinic of Pala, CA the Plaintiff having to endure his pain and numbness every day with no changes to his daily pain level or total numbness [to a very large part of his right hand, arm and wrist area] the Plaintiff was seen by the hand arm specialist Dr. Patel on Monday November 22, 2021.

153.    After the examination was complete by Dr. Patel including more up-to-date x-rays of the Plaintiff's right hand and right arm, Dr. Patel fully agreed with the emergency room Dr. Burn's that Plaintiff had suffered extreme trauma to his right hand and wrist area due to the great possibility of having been handcuffed with cuffs that were either cinched down to much or were too small to begin with.

154.    Dr. Burn's went on to inform the Plaintiff that he indeed had an acute form of Warterberg's Syndrome that could go away in time, or, *if it did not* may require surgerie[s] to relieve the existing extreme pressure of the nerves on his right arms Carpal tunnel vein. Dr. Burns referred him to a different local hand specialist.

155.    *Definitions and Causes of a PINCHED NERVE*, the condition may be caused by:

a)    A nerve passing through a narrow area between bones or other body structure.

b)    Arthritis that causes bones to press on a nerve.

c)    Loss of blood supply to a nerve.

d)    A nerve being overly stretched during and injury.

e)    A sudden injury with swelling.

f)    Long-term wear on the nerve.

156.    *Definitions and Causes of a CONTUSION*, a contusion is a deep bruise. Contusions are the direct result of a blunt injury to tissues and muscle fibers under the skin. The injury causes bleeding under the skin. The skin overlying the contusion may turn blue, purple, red or yellow. Minor injuries will give a person a painless contusion, but more severe injuries can cause contusions that may stay very painful and swollen for weeks or months to follow the injury[s] .

157.   On November 23, 2021, exactly one week after the Plaintiff filed his police brutality civil right complaint with the San Diego County Sheriff's Internal Affairs Unit Plaintiff received a response to his request for a thorough and complete investigation of the *entire* November 11th bogus felony arrest of the Plaintiff.

158.   In reading the San Diego Sheriff's Internal Affairs Units response Plaintiff immediately realized that the agency did completely NOTHING the Plaintiff requested of them, answered *none of his questions* pertaining to the preservation of valuable evidence, and provided the Plaintiff with a generic boiler plate response to his request for a complete and thorough investigation of the two Defendant arresting officers police brutality, denial of Plaintiff's civil rights and injuries he incurred during his bogus arrest and length of time the Plaintiff was left intentionally in pain or being punished and how long these injuries went un-attended and un-recorded.

159.   Basically, the one page generic boiler plate response the Plaintiff received from the SDSDIA unit one week later could have been written by ANY politician, completely skirting very important major facts in their response and *not* entertaining or answering *any* of the Plaintiff's *very important questions* or concerns

160.   Plaintiff has since filed a complaint for police brutality and denial of his civil rights with the County of San Diego Citizen's Law Enforcement Review Board on or around November 23rd 2021 [the same day Plaintiff received the generic boilerplate response letter from the SDSIAU internal affairs unit, but has yet to receive a response as of the writing of this Complaint and lawsuit.

161.   On Friday morning November 19, 2021 at 7:30 ante meridiem the Plaintiff reported in for his initial felony arraignment directly to the information booth at the North San Diego County Superior Court on S. Melrose Dr. in Vista, CA As he was instructed and required to do on his booking release paperwork and on his Alladin Bail Bonds documents he received upon his release from jail.

162.   After checking in with courthouse information attendant he was instructed to go directly to the District Attorneys Office on the 5th floor.

163.    When the Plaintiff reported to the district attorneys office on the 5th floor and checked in he was *immediately and ironically* handed a document totally dismissing ALL charges, the document further stated the district attorneys office would not pursue the felony Domestic Violence charges at all, ever.

164.    As of today exactly [1] one month after the Plaintiff became a victim of intentional police brutality and being totally denied his civil rights for an undue lengthy amount of time, the plaintiff's daily quality of life has been greatly affected.

165.    As of today exactly [1] one month after the Plaintiff became a victim of intentional police brutality and being totally denied his civil rights for an undue lengthy amount of time Plaintiff's physical condition has *NOT changed one iota*, he is in all day and night constant pain, is having to deal with shooting lancing pains and total numbness in almost his entire right hand as a direct result of the intentional trauma Plaintiff incurred at the hands of the [2] two arresting officers.

166.    As of today exactly [1] one month after the Plaintiff became a victim of intentional police brutality and being totally denied his civil rights for an undue lengthy amount of time Plaintiff's, having to endure constant day and night pain, and dealing with shooting lancing pains and total numbness in almost his entire right hand has greatly affected his daily "quality of life" greatly impeding his ability to do some of life's simplest of chores like going to the toilet or showering, and performing numerous everyday things most people do not ever think of until they have been deprived of doing them by this type of major arterial trauma to his nerves.

167.    As of today exactly [1] one month after the Plaintiff became a victim of intentional police brutality and being denied his civil rights for an undue lengthy amount of time in constant day and night pain, and having to deal with shooting lancing pains and total numbness in almost his entire right hand has greatly affected his daily "quality of life" and has directly affected his ability to sleep. He is now experiencing very long sleepless nights, while the entire night he is finding himself dwelling on WHY DID ANY OF THIS HAVE TO HAPPEN AT ALL?

168. Both above-named arresting officer Defendant's watched, assisted or acted in concert in their direct refusals to assist Plaintiff in any way with his civil rights protections or due process rights.

169. Defendant DOES 1-20 all watched, assisted or acted in concert in their direct refusals to assist Plaintiff in any way with his any of his civil rights protections or due process rights.

170. All Defendant's violations of the Equal Protection Clause and due process civil rights violations upon the Plaintiff were willful and unlawful.

171. Defendant's were acting without authority, in excess of their jurisdiction, and beyond the scope of their powers, and in concert to deprive the Plaintiff of his property and protections.

172. Plaintiff's substantive (5th Amendment) and his due process (14th Amendment) protected civil rights were directly and indirectly denied without a lawful 4th Amendment warrant and Plaintiff has never been shown a 4th Amendment warrant or warrant of any kind.

173. Defendant's, at all times herein relevant, ignored and totally disregarded the legal process of the United States and the San Diego County Sheriff's office's legal processes.

174. Defendant's, at all times herein relevant, ignored and totally disregarded the legal process of the United States and the San Diego County Sheriff office's legal processes and intentionally or un-intentionally violated Plaintiff's due process rights and deprived him of his civil rights and liberties.

175. All of the above-named Defendant's, including the [2] two arresting officers and DOES 1-20 at all times herein relevant, have acted in bad faith, wantonly, recklessly, willfully, maliciously, and "in concert" with additional state officers and agents showing a deliberate indifference towards the Plaintiff and Plaintiff rights protected and guaranteed by the United States Constitution [and the local district attorney], with the direct intent and sole purpose of injuring,

humiliating, vexing, oppressing, and causing mental anguish to the Plaintiff, by these reasons and others the Plaintiff is entitled to an award of punitive damages.

176. The San Diego County Sheriff's office was a person who is directly responsible for the trespass and numerous violations of the Plaintiff's *equal protection* and 4th Amendment rights and unreasonable seizure rights.

177. Both above-named Defendant's including but not limited to Does 1-20 are all persons who assisted and directed each other in concert and are *directly responsible* for the trespass and numerous violations of the Plaintiff's *equal protection* and 4th Amendment unreasonable seizure rights.

178. San Diego County is ultimately responsible due to the existing customs and policies of its Officers, agents and employees direct or indirect legal or illegal actions or inactions an denying Plaintiff of his civil rights and liberties.

179. Defendant's were both persons who assisted and directed other Defendant's herein and took lead roles in orchestrating and working in concert with others "under the code of law" to continually [over a lengthy very painful period of time] to violate Plaintiff's equal protection civil rights under the U.S. Constitution.

180. At all times relevant to this federal Complaint Defendant San Diego County [hereinafter COUNTY] Supervisors either directly or indirectly trained, controlled, made policy for, employed, supervised, compensated, enriched or rewarded some or all of the other Defendant's for their actions of the evening and night of Thursday November 11, 2021 and the very early morning hours and all night and morning of the day of Friday November 12, 2021 and thereafter.

181. As a proximate and direct result of the actions or inactions of the Defendant's herein, Plaintiff's civil rights and liberties were knowingly and intentionally violated in direct violation of clearly established very old Federal and State laws.

182. Plaintiff may be still to this day in constraint of his liberties due to the unreasonable and unlawful actions of the Defendant's acting in concert and committed under the Color of Law.

183.   Defendant COUNTY as a policy or custom neglected to train, supervise, control, correct the abuse of authority, or discourage the unlawful use of authority of the Defendant Sheriff officers and agents.

184.   The complete failure to train both Defendant Sheriff Officers included the failure to instruct them in applicable provisions of the United States Constitution and applicable California State Constitution.

185.   The complete failure to train both Defendant Sheriff Officers included the failure to instruct them in applicable provisions of United States statutes and State laws dealing in the use of unlawful trespass, and equal protection of citizens civil rights and liberties *without* a 4th Amendment actively compliant warrant, on seizure of persons or property *without* ANY *warrants whatsoever* and the very costly misuse of COUNTY law enforcement officers paid time to protect the public.

186.   Defendant COUNTY has created a policy and custom or to promote a policy or custom to act "in concert" with the other un-named Defendant's herein to violate Plaintiff's rights, and Defendant Sheriff Officers acted with *total disregard for all of Plaintiff* civil rights and liberties under clearly established laws.

///

///

///

///

///

///

///

///

///

///

///

## IV. FEDERAL CAUSES OF ACTION
### FIRST CLAIM FOR RELIEF
#### Trespass and unreasonable seizure
#### [U.S.C. Title 42 §1983 et al.]
#### From Plaintiff Against All Defendant's

187.    Plaintiff re-alleges and incorporates by reference all facts and all allegations in paragraphs 1 thru 186 above as though fully set forth herein.

188.    At the time Plaintiff was unreasonably seized, he was not engaged in assaultive or threatening conduct whatsoever. He posed NO danger or threat to the public, his wife or any of the above-named Defendant's.

189.    It appears the trespass and removal of Plaintiff from his own private property was unreasonable under the circumstances in every respect. The Defendant's knew or should have known that their actions were done with a deliberate disregard for the civil rights and safety of the Plaintiff, and therefore, warrant the imposition of punitive damages.

190.    It appears the trespass and removal of Plaintiff from his own private property was *intentional* and done with *malice by both Defendant's*.

191.    It appears the Defendant's were apprised, noticed, and totally cognizant of the legal process, and how it should be properly performed.

192.    It appears Defendant actions or inactions were intentional.

193.    It appears all of the herein described actions, all engaged in "under the color of State authority by the Defendant's, including Defendant COUNTY, [sued as a person], is responsible because of its authorization, condoning, and ratification thereof for the acts of its County Sheriff's officers, agents, and servants, deprived the Plaintiff of his rights secured to him by the Constitution of the United States, including but not limited to, his fourth Amendment right to be free from unlawful search and seizure of his person and property and possessions, his eight Amendment right to be free from cruel and unusual punishment, and be totally denied medical attention, violating Plaintiff's fifth and fourteenth Amendment right to due process of the law, and the right to be free for unjustified breech of peace by the arresting Defendant officers and agents

of the COUNTY as contained within the United States and California Constitutions. The actions of the Defendant's ***absolutely shock the public conscience***.

194.    Upon information and belief, the Defendant COUNTY, being sued herein as a person, maintains a pattern and practice of depriving citizens/people of their liberty, property, and breeching the peace and causing direct damage[s] *without any probably cause[s]* or proper foundation as secured by the United States and California Constitutions as demonstrated deprivation of Plaintiff's civil rights.

195.    It appears Defendant's both discriminated against the Plaintiff at every turn.

196.    It appears all above-named Defendant's acted in bad faith and Defendant COUNTY ratified their actions, this shocks the public conscience.

197.    It appears Defendant COUNTY failed and neglected to properly train and supervise its employees, and especially its Sheriff Officers and municipal agents with respect to individual rights as protected by the Constitution of the United States and California as evidenced by the several abuses and damages sustained the Plaintiff over a unnecessarily long extremely painful period of time.

198.    It appears that Defendant's acted in concert and directly observed numerous constitutional violations in progress *without attempting even once to protect and assist Plaintiff* and his rights and property as a United States citizen.

### SECOND CLAIM FOR RELIEF
#### Equal Protection and Due Process
#### U.S.C. Title 42 §1983 & §1985 *et al.*
#### From Plaintiff Against All Defendant's

199.    Plaintiff re-alleges and incorporates by reference all facts and all allegations in paragraphs 1 thru 198 above as though fully set forth herein.

200.    It appears that the violation[s] of the equal protections act coupled with the due process violations were all intentional. The Defendant's knew or should have known that their actions or in-actions were done with a deliberate disregard for the civil rights and liberties, and the personal safety of the Plaintiff and his property, and therefore fully warrants this Courts imposition of punitive damages.

201.    Plaintiff has his reasonable expectations of his rights and protections under **the Equal Protection Clause[1]** due process rights, and 4th & 5th Amendments to the Bill of Rights.

202.    It appears all Defendant's acted in bad faith and Defendant COUNTY ratified their actions, this shocks the public conscience.

### THIRD CLAIM FOR RELIEF
**Municipal Liability for Unconstitutional Customs and Practices**
**U.S.C. Title 42 §1983 *et al.***
**From Plaintiff Against Defendant COUNTY**

203.    Plaintiff re-alleges and incorporates by reference all facts and all allegations in paragraphs 1 thru 202 above as though fully set forth herein.

204.    It appears Defendant COUNTY has clearly shown other County Sheriff's officers accepted U.S. constitutional policies, custom's and practice's.

205.    It also appears Defendant COUNTY has shown a policy and custom and practice *any reasonable* San Diego County Sheriff's officer *would have known* or *should have known* that they were both acting in bad faith in violation of clearly established United States and California State laws.

206.    Defendant COUNTY and DOES 1-20 acting with deliberate indifference to the civil rights and liberties of the public in general and of the present Plaintiff's, knowingly maintained, enforced and applied customs and practices of the following:

   a.    Encouraging, accommodating, or ratifying trespass and unlawful removal of Plaintiff from his property without due process of law;

   b.    Encouraging, accommodating, or ratifying and intentional removal of the Plaintiff from his property and directly or indirectly denying him of his civil rights and liberties in direct violation of the statutes and laws of both the United States and California State Constitutions ;

---

[1] **The Equal Protection Clause** of the 14th Amendment of the U.S. Constitution prohibits states from denying any person within its jurisdiction the equal protection of the laws. In other words, the laws of a state must treat an individual in the same manner as others in similar conditions and circumstances. The equal protection clause is not intended to provide "equality" among individuals or classes but only "equal application" of the laws. The result, therefore, of a law is not relevant so long as there is no discrimination in its application. By denying states the ability to discriminate, the equal protection clause of the United states Constitution is crucial to the protection of a persons civil rights.

c. Employing and retaining, as San Diego County deputy sheriffs and other personnel, individuals such as Defendant COUNTY, who knew or should have known that Defendants knew or reasonably should have known both had propensities for abusing their authority and for mistreating citizens;

d. Defendant COUNTY knew or in the exercise of reasonable care should have known about the inadequate supervising, training, controlling, assigning, and disciplining of these same Defendant COUNTY sheriff's deputies had all or some of the aforementioned bad police brutality and denial of citizens civil rights propensities and bad public relational character traits;

e. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling *intentional conduct* by their San Diego County Sheriff deputies, and

f. By completely failing to discipline the [2] two San Diego County deputies for their obvious blatant illegal conduct or misconduct, including but not limited to, trespass, unreasonable seizure, and numerous violations of Plaintiff's God given equal protection rights and due process violations.

207. It appears, by reason of the aforementioned customs and practices, Plaintiff was severely injured for an unduly uncalled for length of time and was subjected to loss of all of his civil rights and liberties and was directly subjected to personal torture and police brutality at the hands of both San Diego County Sheriff officer Defendant's. Plaintiff suffered extreme pain and still does, WHY?

### FOURTH CLAIM FOR RELIEF
#### Loss of Social Standing
#### U.S.C. Title 42 §1983 et al, and CA Section 242 of Title 18
#### From Plaintiff Against All Defendant's

208. Plaintiff re-alleges and incorporates by reference all facts and all allegations in paragraphs 1 thru 206 above as though fully set forth herein.

209. Plaintiff was publicized and he became an *outcast* within his own public circle.

210. Plaintiff has been *shunned* by his own friends.

211. Plaintiff was _not_ 'included' in any further gatherings with friends, family, and social groups that he was previously 'included' in.

212. Plaintiff has lost all social standing with friends, family, social and work groups.

213. Defendant officers conduct was done knowingly, willfully and will malicious intent, and the Plaintiff is now entitled to punitive damages in the amount to be determined by proof at trial.

**FIFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**U.S.C. Title 42 §1983 *et al.***
**From Plaintiff Against All Defendant's**

214. Plaintiff re-alleges and incorporates by reference all facts and all allegations in paragraphs 1 thru 213 above as though fully set forth herein.

215. It appears the ultimate facts constituting the outrageous conduct underlying the causes of action outlined below:

    a. Becoming and directing trespass on Plaintiff's property and tenancy;

    b. *Not allowing* filing of public medical records and court due process;

    c. *Not allowing* filing of forms to protect Plaintiff's civil rights, personal safety, or document *any* medical conditions or protect *any* of Plaintiff's civil rights or liberties or his property.

    d. Ignoring all of Plaintiff's warnings during the pre-filing and service of this United States District Court federal Complaint.

    e. Ignoring Plaintiff's filing of a police brutality, civil liberties report to the San Diego County Sheriff's Internal Affairs Department;

    f. Ignoring Plaintiff's filing of a police brutality, civil liberties report to the San Diego County Citizens' Law Enforcement Review Board;

    g. Performing an unlawful torturously painful trespass without notice or an active warrant pursuant to Plaintiff's 4th Amendment rights;

h. Performing an unlawful torturously painful bogus arrest on the Plaintiff and inflicted personal police brutality and punishment[s] on the Plaintiff clearly violating Federal and State statute[s] including his due process rights intended to protect Plaintiff's civil rights and liberties.

i. Breach of implied covenant of quite enjoyment of tenancy and the Plaintiff property owners civil rights and liberties;

j. Breach of implied covenant of quite enjoyment of the owner and the owners rights;

k. Forcible entry into the private premisses of the Plaintiff in direct violation of ownership or tenancy statutes of the United States and State of California Constitution.

216. Defendant's actions were outrageous, intentional and malicious, and done with reckless disregard of the fact that their actions would certainly cause the Plaintiff to suffer severe prolonged physical pain ending in extreme nerve damage as a direct result of police brutality and ignorance or non-ignorance to State and federal laws.

217. Defendant's actions were outrageous, intentional and malicious, and done with reckless disregard of the fact that their actions would certainly cause the Plaintiff to suffer severe physical distress and trauma and sever emotional distress.

218. As a proximate result of the acts and omissions of the Defendant's, Plaintiff suffered multiple manifestations of severe emotional distress, specifically in the form of total humiliation, mental anguish, anxiety, ongoing emotional distress, psychosis, massive loss of sleep, loss of appetite, and uncontrollable unpredictable fear. The multiple illegal acts the Defendant's intentionally inflicted for prolonged painful period of time *without any medical attention* provided to the Plaintiff at any time have injured Plaintiff in mind, soul and body with no end in sight.

219. Defendant's draconian conduct was done knowingly, willfully and with malicious intent, and Plaintiff is entitled to punitive damages in amount to be determined by proof at trial.

# PRAYER FOR RELIEF
## For Plaintiff against all Defendant's

**WHEREFORE,** Plaintiff ROY TUCK requests entry of judgement in his favor and against Defendant's, for all claims as follows:

A. For compensatory damages in the amount to be proven and trial;

B. For punitive damages against all Defendant's, in an amount to be proven at trial;

C. For reasonable costs of this suit and attorneys fees, including attorneys fees pursuant to 42 U.S.C. §1988 *et al*;

D. For the return of the $5,000.00 U.S. dollars Plaintiff's wife had to pay to get her husband bailed out of the Vista jail after her husbands bogus uncalled for arrest;

F. For interest; and

G. For such further other relief as this honorable Court may deem just, proper and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues, so triable as a matter of law.

Respectfully submitted,

Dated this 13th day of December 2021,

ROY TUCK, PLAINTIFF IN PRO SE

///
///
///
///
///
///

# **VERIFICATION**
## DECLARATION OF ROY TUCK

1.    I, ROY TUCK, declare as follows:

2.    I am of age, sound mind and competent to testify to facts based on firsthand knowledge of all of the above items as so stated herein.

3.    I have been damaged financially, credit wise, socially and emotionally as a result of Defendant's and Does 1-20 unlawful actions and numerous violations as so stated in the attached Complaint . . .

4.    I have read all of the foregoing pleadings and know the facts therein so stated To be true and correct to the best of my knowledge.

5.    I declare, under the penalty of perjury to the laws of the state of California, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated this 13th day of December 2021

ROY TUCK, PLAINTIFF IN PRO SE

///
///
///
///
///
///
///



U.S. DISTRICT COURT
OFFICE OF THE CLERK
333 West Broadway, Suite 420
San Diego, CA 92101

readyPost

PRIORITY MAIL 1-DAY®

P

SHIP
TO:
333 WEST BROADWAY
San Diego CA 92101

RECEIVED

USPS TRACKING® NUMBER

9505 5096 9095 1347 7885 90

